## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

SYLVIA Y. COSME-MONTALVO, et al.,

    Plaintiffs,

        v.                                                    CIVIL NO.: 11-2197 (MEL)

TRAFON GROUP, INC.,

    Defendant.

## OPINION AND ORDER

**I.**  **PROCEDURAL HISTORY**

On December 14, 2011, plaintiffs Sylvia Y. Cosme Montalvo ("plaintiff"[1] or "Cosme") and José Quiñones Mercado (collectively, "plaintiffs") filed a complaint against defendant Trafon Group, Inc. ("defendant" or "Trafon") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Puerto Rico law.  (D.E. 1).  Pending before the court is defendant's motion for summary judgment.  (D.E. 21).  Over the course of the last two months, plaintiffs and defendant have litigated four motions to strike (D.E. 33; 41; 56; 85) relating to the pending motion.  Now that the controversies over the motions to strike have been adjudicated, the court is presented with memoranda supporting and opposing the motion for summary judgment (D.E. 21; 54; 74) and proposed statements of uncontested material facts and responses thereto (D.E. 51; 55; 65; 82; 85).  For the reasons set forth below, defendant's motion for summary judgment is granted in part and denied in part.

---

[1] "Plaintiff" in the singular shall refer only to Cosme as it is her federal claims under Title VII which are primarily at issue in this opinion and order.

## II.   SUMMARY OF UNCONTESTED MATERIAL FACTS[2]

Plaintiff began working for Trafon in June or July 2009.   At all times during her employment with Trafon, plaintiff received a base annual salary of $91,000, an annual car allowance of $9,000, and the Christmas bonus required by local law.   (D.E. 1, ¶ 6; 51, ¶¶ 2, 4; 55, ¶¶ 2, 4; 55-1, ¶¶ 2–3; 55-2, ¶ 2; 55-5, at 6 ll. 16–21; 60-1, ¶ 3(h), (j)).

Although the date of the actual initiation of plaintiff's health insurance coverage is contested,[3] it is uncontested that plaintiff signed her payroll deduction authorization on August 3, 2009, for health and dental plans, specifying an effective date of August 1, 2009.   It is also uncontested that, on August 10, 2009, defendant sent letters to MAPFRE Life Insurance and Delta Dental Plan of P.R. "certify[ing] that … [plaintiff wa]s entitled to" a medical-hospital plan and a dental plan, respectively, also specifying an effective date of August 1, 2009.   (D.E. 29-3, at 1; 29-5, at 1).   On September 1, 2009, MAPFRE Life Insurance sent a letter "certify[ing]" plaintiff's insurance coverage.   (D.E. 51-2, at 2).   Aside from the issue of plaintiff's health insurance coverage, her salary and marginal benefits were never reduced or otherwise negatively affected while she was working for Trafon.   (D.E. 22-3; 22-4; 22-6; 29-2; 29-3; 29-5; 51, ¶¶ 5, 7–10; 51-2; 55, ¶¶ 5, 7–10).

At least between October 2009 and her dismissal in February 2011, plaintiff had the position of Director of Strategic and Business Intelligence at Trafon, a position which, according to plaintiff, she was never formally informed she would occupy.[4]   Plaintiff was the only person

---

[2] In accordance with Local Rule 56(e), all proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted.

[3] It is contested whether plaintiff began receiving corporate health insurance coverage in August or September 2009. (See D.E. 51, ¶¶ 4–5, 7–10; 55, ¶¶ 4–5, 7–10; compare D.E. 22-3; 29-2 with D.E. 55-1, ¶ 9; see also D.E. 51-2).

[4] Although plaintiff argues that defendant "fails to support this statement with any evidence or document" and "only references the allegations in the Complaint," (D.E. 55, ¶ 3), "[t]he moving party may cite to the pleadings … to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law." Nat'l Sec. Sys., Inc. v. Iola, Civ. No. 00-6293 (AET), 2007 WL 2869145, at *1 (D.N.J. Sept. 26, 2007) (citing Fed. R. Civ. P. 56(c)); see also Bio-Med. Applications of Georgia, Inc. v. City of Dalton, Ga., 685 F. Supp. 2d 1321,

who ever occupied the position of Director of Strategic and Business Intelligence at Trafon. (D.E. 1, ¶ 10; 51, ¶ 3; 55, ¶¶ 3, 25–27; 65, ¶¶ 6–8).

In October 2009, Oscar Pérez ("Pérez") was hired for the position of Marketing Director. Pérez's compensation package was part of the consideration in an Asset Purchase Agreement which Trafon entered into with Importers and Distributors, Inc., a company wholly owned by Pérez. When Pérez was hired, he received an annual salary of $145,000, an annual performance bonus of $15,000, a company car, 100% health care benefit, and a Christmas bonus required by state law. Before working for Trafon, Pérez had marketing experience at Proctor and Gamble, Playtex, and his own business. (D.E. 51, ¶¶ 20–21; 51-4, at 2; 55, ¶¶ 20–21, 30–31; 60-1, ¶ 3(x)–(y); 65, ¶¶ 11–12).

Javier Pietrantoni ("Pietrantoni"), Senior Executive Vice President for Trafon, was the direct supervisor of plaintiff and Pérez. Pérez's job performance did not meet Pietrantoni's expectations. On the other hand, plaintiff's job performance was satisfactory and met Pietrantoni's expectations. (D.E. 55, ¶¶ 32–34; 65, ¶¶ 13–15).

At Trafon, plaintiff was "at the same level as" José Prado ("Prado"), Pérez, Héctor Galarza ("Galarza"), and Alejandro Sánchez ("Sánchez"). (D.E. 55-6, at 8). Pérez, Galarza, and Sánchez received higher levels of compensation than plaintiff. At least when Prado, an attorney who was hired as the Director of Human Resources, was recruited for his position on May 7, 2009, he received the same salary and benefits that plaintiff received throughout her time at Trafon.[5] (D.E. 22-2; 29-1; 51, ¶ 6; 55, ¶¶ 6, 28–29; 60-1, ¶ 3(l); 65, ¶¶ 9–10).

---

1326 n.10 (N.D. Ga. 2009) (noting that "it is appropriate to cite to an opposing party's pleadings because those pleadings are deemed to be admissions under the Federal Rules of Evidence").

[5] In support of Proposed Fact No. 6, defendant cites Prado's recruitment letter, which is dated May 7, 2009, (D.E. 22-2; 29-1) and Pietrantoni's statement under penalty of perjury, which does not specify the period of time that plaintiff "received the exact same salary and benefits" as Prado (D.E. 60-1, ¶ 3(l)). Because "all reasonable inferences" must be "indulg[ed] … in … favor" of the party opposing summary judgment, Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990), the scope of this particular fact is limited to the time of Prado's recruitment.

On October 7, 2010, a meeting was held wherein a representative of London Consulting Group explained that minutes needed to be prepared for all meetings.  David Valle ("Valle"), Trafon's Vice President of Procurement, and Pérez commented that, "That was easy it has to be Sylvia because she is a woman."  (D.E. 55-1, ¶ 16).  Although Pietrantoni heard the comment, he did not take any action.  (D.E. 55, ¶ 39; 65, ¶ 20).

At the beginning of 2011, defendant, seeking to reduce expenses, decided to perform a corporate restructuring by eliminating positions, redistributing duties, and merging positions.[6] Plaintiff's position of Director of Strategic and Business Intelligence was eliminated on February 2, 2011.  On February 9, 2011, José Prado, Director of Human Resources, called plaintiff to inform her that she was terminated from her position at Trafon.  At the time she was dismissed, plaintiff had been placed under rest pursuant to an order issued by the Puerto Rico State Insurance Fund.  No person was assigned plaintiff's position after she was terminated.  (D.E. 51, ¶¶ 12–13, 17; 55, ¶¶ 12–13, 17, 37–38; 60-1, ¶ 3(n), (p), (t)–(u); 65, ¶¶ 18–19).

As part of the restructuring process, in November 2011, the position of Marketing Director and the Marketing Department as a whole were eliminated, leading to Pérez's termination.[7]  Pérez's duties and responsibilities as Marketing Director were not performed by anyone in Trafon after his termination.  In addition to plaintiff and Pérez, more than eighty employees were discharged in 2011.  Over fifty employees were discharged in 2012.  Aside from a list of terminated employees, Trafon does not have any document regarding its restructuring process.  (D.E. 22-9; 29-6; 51, ¶¶ 14, 22, 23; 55, ¶ 14, 22, 23, 36; 60-1, ¶ 3(aa)–(bb); 65, ¶ 17).

---

[6] Aside from averring an absence of documentation, plaintiff has not cited to any specific reference to the record to suggest otherwise.  (D.E. 55, ¶ 12).

[7] Although the list of dismissed employees states that the reason for plaintiff's termination was "Position Eliminated," it merely indicates "Dismissal" for Pérez without greater specificity.  (D.E. 29-6, at 2–3). Nevertheless, Pietrantoni's statement under penalty of perjury indicating that the elimination of the Marketing Director position and Marketing Department led to Pérez's dismissal is uncontroverted.  (See D.E. 51, ¶ 22; 55, ¶ 22; 60-1, ¶ 3(aa)).

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence …. So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood …." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.   ANALYSIS

### A.   Title VII

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). "Absent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996). "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Id. at 253 (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. "The analysis 'is intended

progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 54 (1st Cir. 2000) (quoting <u>Burdine</u>, 450 U.S. at 255 n.8).

Here, plaintiff has alleged three bases for sex discrimination under Title VII: termination, wage discrimination, and hostile work environment.  Because "[t]he elements of prima facie proof vary with the nature of the discrimination claim," <u>Monteagudo v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico</u>, 425 F. Supp. 2d 206, 212 (D.P.R. 2006), each basis for discrimination will be examined in turn.

### 1.    Termination

For plaintiff's claim based on her termination, she must show that: "(1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person."  <u>Santiago-Ramos</u>, 217 F.3d at 54.  As an initial matter, it is uncontested that the first three prongs of the prima facie case have been met.  With respect to plaintiff's termination, however, defendant contends that she has failed to establish the fourth prong.  (D.E. 21, at 14–15).  The fourth prong has also been phrased by the First Circuit as "requir[ing] a plaintiff to demonstrate that '[the] employer sought a replacement for [plaintiff] with roughly equivalent qualifications.'"  <u>Villanustre v. Hard Rock Café Puerto Rico, Inc.</u>, 556 F. Supp. 2d 79, 84 (D.P.R. 2008) (quoting <u>Smith v. Stratus Computer</u>, 40 F.3d 11, 15 (1st Cir. 1994)).  The terms "continued to have her duties performed," <u>Santiago-Ramos</u>, 217 F.3d at 54, and "sought a replacement for her," <u>Smith</u>, 40 F.3d at 15, both imply "[t]he replacement of the plaintiff" with another person, <u>Villanustre</u>, 556 F. Supp. 2d at 84.  In other words, plaintiff must be "terminated despite the employer's 'continued need for the same services and skills.'"  <u>Id.</u> (quoting <u>Mesnick v. General Electric Co.</u>, 950 F.2d 816, 823 (1st Cir. 1991)).

Here, plaintiff has not shown that defendant continued to have her duties performed by anyone after her termination. It is uncontested that no one was assigned the position of Director of Strategic and Business Intelligence after plaintiff's termination. (D.E. 51, ¶ 17; 55, ¶ 17; 60-1, ¶ 3(t)–(u)). No evidence has been brought to the attention of the court that any of the particular duties associated with this position was performed by anyone after she was dismissed. It is further undisputed that Pérez occupied the position of Marketing Director beginning in October 2009, not plaintiff. (D.E. 1, ¶ 10; 51, ¶ 3; 55, ¶¶ 3, 30; 65, ¶ 11). As such, even if plaintiff performed duties assigned to Pérez after he became Marketing Director, this does not demonstrate that they were *her* duties. As plaintiff acknowledges in her statement under penalty of perjury, these duties "were supposed to be performed by" Pérez and were "the duties of his position." (D.E. 55-1, ¶¶ 14–15). Plaintiff has not shown that defendant "continued to have *her* duties performed by" Pérez, Santiago-Ramos, 217 F.3d at 54 (emphasis added), or that Pérez was a "replacement for her," Smith, 40 F.3d at 15. Thus, plaintiff has failed to establish the fourth prong of the prima facie case. Although the analysis regarding plaintiff's Title VII discrimination claim based on her termination could end here, even if we were to assume *arguendo* that certain duties of the Marketing Director position may be characterized as plaintiff's duties—as opposed to duties which "were supposed to be performed by" Pérez but were performed by plaintiff, (D.E. 55-1, ¶ 15)—and that plaintiff has met all of the prongs of the prima facie case, her claim would nonetheless fail for the reasons that ensue.[8]

---

[8] "[P]roof that [existing employees] assumed [plaintiff]'s tasks, in addition to performing their original duties, [i]s adequate to establish the final element of the prima facie case." Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 59 (1st Cir. 2005). Nonetheless, this is "limited to stating the proper standard for the replacement element of the prima facie case in a wrongful termination action." Id. at 59 n.5. At the final stage of the burden-shifting scheme, "a position elimination defense is not defeated merely because another employee, already on the payroll, is designated to carry out some or all of the fired employee's duties in addition to his own, or because those duties are otherwise reallocated within the existing work force." Smith, 76 F.3d at 423.

Assuming that plaintiff has established all elements of the prima facie (an untenable premise as to the forth prong for the reasons discussed above), the burden then shifts to defendant, but "only a burden of production." Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999). This "burden to 'articulate' a legitimate reason is *not* a burden to persuade the court that [it] was in fact motivated by that reason and not by a discriminatory one." Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir. 1984) (emphasis in original). "The burden of persuasion remains at all times with the plaintiff." Thomas, 183 F.3d at 56. In order to meet its burden, defendant may simply "introduc[e] 'admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus.'" Johnson, 731 F.2d at 70 (quoting Burdine, 450 U.S. at 257). Although whether defendant "suffered a severe reduction in its sales and profits" beginning in 2009 is disputed, (D.E. 51, ¶ 11), it is uncontested that defendant sought to reduce its expenses by reorganizing part of its corporate structure, eliminating positions, redistributing duties, and merging positions. (D.E. 51, ¶ 12; 55, ¶ 12; 60-1, ¶ 3(n)). Defendant has articulated reduction of losses and expenses as a reason for plaintiff's termination through admissible evidence, (see D.E. 60-1, ¶ 3(m), (p)), which is all that is required at this stage of the analysis.[9] As such, defendant has met its burden to articulate a legitimate reason for plaintiff's termination. See Smith, 76 F.3d at 422 ("There is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups" as long as the "decision to eliminate specific positions [is] not … tainted by a discriminatory animus.").

---

[9] Although the income tax returns for 2009 and 2010 have not been stricken, they are unnecessary for defendant to meet its burden at this stage, as defendant introduced admissible evidence in the form of Pietrantoni's statement under penalty of perjury in support of its alleged nondiscriminatory reason.

At the final stage of the analysis, "the presumption raised by the prima facie case is rebutted and drops from the case, and it is up to the complainant to show that a forbidden motive was at work."  Casamento v. Massachusetts Bay Transp. Auth., 550 F.3d 163, 165 (1st Cir. 2008) (internal quotations and citations omitted).  Plaintiff's burden here "is often broken into two separate tasks."  Thomas, 183 F.3d at 56.  With respect to her termination, plaintiff must "provide[] sufficient evidence to demonstrate that [defendant]'s explanation is a pretext and that a motivating factor for her termination was her gender."  García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008).  Thus, when analyzing a motion for summary judgment, the question is whether "there is no competent evidence from which a rational factfinder reasonably could infer that [the employer]'s explanation for its adverse employment action was a pretext for unlawful employment discrimination."  Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995).

While it is true that plaintiff must show both pretext and discriminatory animus, that "'does not necessarily require the introduction of additional evidence beyond that required to show pretext.'"  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 6 (1st Cir. 2000) (quoting Thomas, 183 F.3d at 57).  Rather, "[t]he same evidence used to show pretext can support a finding of discriminatory animus if it enables a factfinder 'reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'"  Id. (quoting Thomas, 183 F.3d at 57).  In order to make this determination, "courts will look at evidence of discrimination … as part of an aggregate package of proof offered by the plaintiff."  Mesnick, 950 F.2d at 824.  For plaintiff to establish pretext, "'the full panoply of circumstantial evidence is available, including but not limited to statistical evidence showing disparate treatment by the employer of members of the protected class, comments by decision makers which denigrate [persons in the protected group], the incidence of differential treatment

10

in the workplace, and the deployment of … replacements.'"   Booker v. Massachusetts Dep't of Pub. Health, 527 F. Supp. 2d 216, 226 (D. Mass. 2007) (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 581 (1st Cir. 1999)).

As an initial matter, simply because the duties plaintiff was performing attributable to the position of Marketing Director were re-absorbed into Pérez's position after her termination does not imply that defendant's proffered nondiscriminatory reason was mere pretext.  Defendant in LeBlanc v. Great Am. Ins. Co., 6 F.3d 836 (1st Cir. 1993), offered as its nondiscriminatory reason for plaintiff's termination that it was conducting a reduction in force.  Although the absorption of plaintiff's duties by existing employees qualifies as replacement of plaintiff for purposes of the fourth prong of the prima facie case, see Rodríguez-Torres, 399 F.3d at 59 & n.4 (noting that its ruling was not inconsistent with LeBlanc), the LeBlanc court held that, for purposes of determining pretext, "[a] discharged employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'"  6 F.3d at 846 (quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)).  Even if one considers the duties of Marketing Director which plaintiff performed to be her duties, Pérez was not "hired or reassigned to perform the plaintiff's duties."  LeBlanc, 6 F.3d at 846.  As such, "a reasonable factfinder c[an]not infer pretext … from these circumstances."  Id. at 843.

Furthermore, plaintiff has not introduced statistical evidence of disparate treatment within Trafon in its decision to terminate over one hundred thirty employees between 2011 and 2012[10] or denigrating comments by a decisionmaker.[11]  Nor has plaintiff submitted evidence that her

---

[10] According to the termination list provided by defendant, it appears that approximately 80% of the employees dismissed in 2011 and 2012 were male.  (See D.E. 29-6).

[11] With respect to the incident on October 7, 2010, in which Valle and Pérez implied that plaintiff should take notes because she is a woman, "remarks by nondecisionmakers generally are not probative of an employer's intent."

position was not actually eliminated.  See Weston-Smith v. Cooley Dickinson Hosp., Inc., 153 F. Supp. 2d 62, 72 (D. Mass. 2001), aff'd, 282 F.3d 60 (1st Cir. 2002).  Rather, plaintiff points out that, aside from the list of Trafon employees who were terminated in 2011 and 2012, defendant has no documentation regarding its restructuring process.[12]  Moreover, she attempts to dispute the nature of defendant's financial situation in 2009 and 2010.  In support of its alleged nondiscriminatory reason, defendant submits, along with Pietrantoni's statement under penalty perjury indicating that Trafon has been "suffer[ing] a severe reduction in its sales and profits" since 2009 and "losses incurred on the years 2009 and 2010," its income tax returns for 2009 and 2010 to show that it experienced overall losses of $2,817,313 and $6,334,719 in 2009 and 2010, respectively.  (D.E. 60-1, ¶ 3(m)–(n); 62-3, at 3 pt. VI l. 1; 62-4, at 3 pt. VI l. 1; 82, ¶¶ 3–5).  In response, plaintiff points to certain line items in Schedule P of defendant's tax returns to show that there are other data that "appear[] to … completely contradict[ said] proposed fact," including "net sales" of $42,287,548 and $138,475,702, and "gross profit[s] on sales or production" of $6,588,301[13] and $19,192,930, in 2009 and 2010, respectively.  (D.E. 62-3, at 11 pt. II ll. 1, 8; 62-4, at 9 pt. II ll. 1, 8; 85, ¶¶ 12–13).  As such, the nature of Trafon's sales and profits on sales and production beginning in 2009 is a contested issue of fact.  Nevertheless, defendant also cites the reduction in Trafon's losses and expenses as a nondiscriminatory reason for plaintiff's termination.  (See D.E. 60-1, ¶ 3(n), (p)).  Figures for Trafon's sales and profits on sales or production constitute only one part of this equation, as they do not take into account deductions (such as, for instance, salaries, commissions, and bonuses to employees) in order to

---

Conto v. Concord Hosp., Inc., 265 F.3d 79, 81 n.4 (1st Cir. 2001); see also Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998).  Neither Valle nor Pérez were plaintiff's supervisors, nor has any evidence been brought to the attention of the court that either had any participation in the decision to terminate plaintiff.

[12] It is undisputed, however, that a restructuring did occur.  (D.E. 51, ¶ 12; 55, ¶ 12; 60-1, ¶ 3(n)).

[13] Although plaintiff cites this figure as $9,588,301, it appears to be a typographical error.  (Compare D.E. 85, ¶ 12, with D.E. 62-3, at 11 pt. II l. 8).

reach figures for "net income subject to tax." (D.E. 62-3, at 11 pt. I l. 7; 62-4, at 9 pt. I l. 7). Thus, whether one focuses on "reconciliation of net income (or loss) per books with net taxable income (or loss) per return," (D.E. 62-3, at 3; 62-4, at 3), as defendant does, or Schedule P, (D.E. 62-3, at 11–12; 62-4, at 9–10), as plaintiff does, in order to determine the nature of defendant's overall losses, the end results are negative and increase in magnitude from 2009 to 2010. (Compare D.E. 62-3, at 3 pt. VI l. 1, with D.E. 62-4, at 3 pt. VI l. 1; compare D.E. 62-3, at 11 pt. I l. 7, with D.E. 62-4, at 9 pt. I l. 7).

As in this case, the LeBlanc plaintiff sought to undermine the employer's claim of financial difficulties by pointing to a particular measure of profitability. See 6 F.3d at 846. Nonetheless, the First Circuit held that the proper standard is not "whether [defendant]'s finances, viewed by one yardstick, might arguably be seen by someone else in a more optimistic light than did its managers, but whether there was evidence of profitable performance sufficient to permit a reasonable jury to infer that [defendant]'s proffered pessimistic analysis—given as a reason for the layoffs—was a mere pretense." LeBlanc, 6 F.3d at 847 (holding that "a jury would lack any rational basis … to conclude that [defendant]'s assertions of financial concern, as a basis for the discharges, were a sham"); see also Feliciano de la Cruz, 218 F.3d at 8 ("Title VII was not designed to transform courts into 'super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions.'" (quoting Mesnick, 950 F.2d at 825)). From what has been brought to the attention of the court regarding defendant's income tax returns, there is not sufficient evidence for the trier of fact to make an inference that defendant's proffered reason for plaintiff's discharge was a sham.[14]   It is

---

[14] Plaintiff has not submitted any evidence aside from the income tax returns indicating that Trafon was not experiencing net losses.  As such, if defendant's income tax returns for 2009 and 2010 had been stricken as requested by plaintiff, (D.E. 85), Pietrantoni's statement under penalty of perjury indicating that Trafon's restructuring was for reduction of losses and expenses would still remain uncontroverted.

uncontroverted that, in an attempt to reduce losses and expenses, there actually was a restructuring in Trafon and that there were over one hundred thirty employees terminated in 2011 and 2012, including plaintiff and Pérez.  (D.E. 22-9; 29-6; 51, ¶¶ 12, 14; 55, ¶¶ 12, 14; 60-1, ¶ 3(n)).

Plaintiff also points out that even though she arrived at Trafon approximately three or four months earlier than Pérez, she received lower pay than Pérez, their supervisor considered her performance to be superior to Pérez's, and she performed duties applicable to the position of Marketing Director, (D.E. 51, ¶ 2; 55, ¶¶ 2, 24, 29–30; 55-1, ¶¶ 14–15; 55-7, at 12; 65, ¶¶ 5, 10–11), she was terminated before Pérez.  In other words, plaintiff seeks to show pretext and discriminatory animus by showing that she and Pérez were similarly situated and that Pérez was given preferential treatment.  "[S]how[ing] that similarly-situated employees belonging to a different … group were given preferential treatment" can be a "persuasive means of establishing pretext."  Booker, 527 F. Supp. 2d at 226.  "'[A] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in material respects.'"  Walker v. City of Holyoke, 523 F. Supp. 2d 86, 103 (D. Mass. 2007) (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)).  "'[I]n offering … comparative evidence, [plaintiff] bears the burden of showing that the individuals with whom she seeks to be compared have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  Colón v. Mills, 646 F. Supp. 2d 224, 237 (D.P.R. 2009) (quoting Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999)), aff'd sub nom. Rivera-Colón v. Mills, 635 F.3d 9 (1st Cir. 2011).

Plaintiff, however, has failed to point to admissible evidence which could lead a reasonable jury to determine that, when she was terminated in February 2011, she and Pérez were similarly situated.  At this stage of the analysis, because ultimately plaintiff bears the burden of proof on the issue of pretext, she cannot merely "rely on the absence of competent evidence" regarding whether she was similarly situated to Pérez, "but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute."  McCarthy, 56 F.3d at 315.  It is uncontested that plaintiff and Pérez occupied different positions.  Although there is contested evidence that plaintiff performed duties of the Marketing Director position, plaintiff's position was as the Director of Strategic and Business Intelligence, whereas Pérez was the Marketing Director.  (D.E. 51, ¶ 3; 55, ¶¶ 3, 30; 65, ¶ 11).  Although plaintiff and Pérez were both supervised by Pietrantoni, who considered them to be "at the same level," (D.E. 55, ¶ 32; 55-6, at 8; 65, ¶ 13), no evidence has been submitted to the court regarding the nature of the duties of either position, much less evidence that the duties were in any way similar.  See Manuel v. WSBT, Inc., 706 F. Supp. 654, 660 (N.D. Ind. 1988) ("[T]he court cannot infer proof of similarity in skill, effort, and responsibility from the common job title of 'manager' ….").  Moreover, in February 2011, the position of Director of Strategic and Business Intelligence—plaintiff's position—was entirely eliminated.  (D.E. 51, ¶ 13; 55, ¶ 13; 60-1, ¶ 3(p)).  It is uncontested that no one was assigned this position after plaintiff's dismissal, and there is no evidence that any of its attendant duties were absorbed into other positions.  (D.E. 51, ¶ 17; 55, ¶ 17; 60-1, ¶ 3(t)–(u)).  In contrast, Pérez's position of Marketing Director was not eliminated in February 2011, but rather in November 2011.  Although it is contested whether some of their duties may have overlapped—specifically, the duties performed by plaintiff which "were supposed to be performed by" Pérez, (D.E. 55-1, ¶ 15)—the existence of the aforementioned

"differentiating … circumstances," <u>Rodríguez-Cuervos</u>, 181 F.3d at 21, prevent a reasonable jury from concluding that plaintiff was "'"similarly situated in all material respects"'" to Pérez. <u>Rivera-Aponte v. Rest. Metropol #3, Inc.</u>, 338 F.3d 9, 12 (1st Cir. 2003) (quoting <u>Rodríguez-Cuervos</u>, 181 F.3d at 21).

In <u>Weston-Smith v. Cooley Dickinson Hosp., Inc.</u>, 282 F.3d 60 (1st Cir. 2002), the First Circuit held that, despite the fact that plaintiff's job performance had been satisfactory,[15] the remaining job "encompassed functions" of the former job, and the remaining job provided a higher salary than her former job, "there [wa]s little, if any, admissible evidence suggesting that the decision to merge [plaintiff]'s job function into a higher level job in a streamlined organization was motivated by either retaliation or discrimination." 282 F.3d at 69. Similarly, here, the mere fact that plaintiff's job performance had been satisfactory, (D.E. 55, ¶ 33; 65, ¶ 14), some of the duties plaintiff allegedly was performing were encompassed by the Marketing Director position, (D.E. 55, ¶ 25; 65, ¶ 6), and the position of Marketing Director provided a higher salary at the time of plaintiff's termination, (D.E. 55, ¶ 29; 65, ¶ 10), is insufficient for a reasonable jury to infer discriminatory animus.

Pérez's position, Marketing Director, was, like plaintiff's position, eliminated in November 2011. (D.E. 51, ¶ 22; 55, ¶ 22; 60-1, ¶ 3(aa)). Even assuming that plaintiff in February 2011 was similarly situated to Pérez in November 2011—because during those months their respective positions were eliminated—there is no evidence that Pérez in November 2011 was given any preferential treatment. Plaintiff and Pérez were both terminated the same month that their positions were eliminated. No one was assigned either of their positions after their

---

[15] Although the First Circuit did not discuss plaintiff's job performance directly, it stated that "her prima facie case is undisputed." <u>Weston-Smith</u>, 282 F.3d at 70. As expressed by the district court, the second prong of the prima facie case requires that "her job performance had been satisfactory." <u>Weston-Smith v. Cooley Dickinson Hosp., Inc.</u>, 153 F. Supp. 2d 62, 70 (D. Mass. 2001).

respective dismissals.  (D.E. 51, ¶¶ 17, 23; 55, ¶¶ 17, 23; 60-1, ¶ 3(t)–(u), (bb)).  Thus, plaintiff

cannot establish that Pérez received preferential treatment for purposes of showing pretext.

Because plaintiff has not established a genuine and material fact with respect to the fourth prong

of the prima facie case, pretext, or discriminatory animus,[16] defendant "is entitled to judgment as

a matter of law," Fed. R. Civ. P. 56(a), on plaintiff's claim based on her termination.[17]

## 2.    Wage Discrimination

As an instance of "disparate treatment in her working conditions because of her gender,"

plaintiff alleges that "[a]ll the other male employees in the same hierarchy as her had a higher

and better compensation including benefits."  (D.E. 54, at 12).  In order to establish a prima facie

case for gender-based wage discrimination under Title VII, plaintiff must "show[] by a

preponderance of the evidence that she has a job similar to that of higher paid males."  Rodríguez

v. SmithKline Beecham Pharm., Puerto Rico, Inc., 62 F. Supp. 2d 374, 382 (D.P.R. 1999) (citing

Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992)), aff'd sub

nom. Rodríguez v. Smithkline Beecham, 224 F.3d 1 (1st Cir. 2000).[18]

---

[16] Moreover, even if plaintiff provided sufficient evidence for a reasonable jury to decide that defendant's alleged nondiscriminatory reason was a pretext, it would not support a finding of discriminatory animus.  "It is not enough … to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993) (emphasis in original).  If this case went to trial with only this evidence of pretext, "the jury 'would be left to guess at the reasons behind the pretext.'"  Feliciano de la Cruz, 218 F.3d at 9 (quoting Medina-Muñoz, 896 F.2d at 10) (finding that, while plaintiff "survive[d] summary judgment on th[e] issue" of pretext, "summary judgment [wa]s proper" nonetheless because plaintiff's evidence failed to "show that the reason" for her termination "was discrimination based on [her] Puerto Rican origin").

[17] In her response in opposition, plaintiff asserts that the position of Director of Strategic and Business Intelligence was "intentionally created for her in order to later discharge her under the pretext of 'eliminating' the same."  (D.E. 54, at 5).  Nevertheless, plaintiff has cited no evidence—even a statement under penalty of perjury—in support of this argument.

[18] The First Circuit, in affirming the district court's decision, did not rule on whether the Equal Pay Act or the general Title VII framework applies for a prima facie case of wage discrimination under Title VII.  See Rodríguez, 224 F.3d at 8 n.11.  The use of the general Title VII framework for a Title VII wage discrimination case is not without precedent in this district.  See Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d 351, 363 (D.P.R. 2009).  As the district court noted in Rodríguez, "altering the evidentiary structure under Title VII just because the means used to discriminate dealt with compensation is nonsensical."  62 F. Supp. 2d at 382 (D.P.R. 1999).  Moreover, defendant has made no argument that the EPA framework should apply here.  Thus, the prima facie case applicable for plaintiff's wage discrimination claim shall be under the McDonnell Douglas framework.

Plaintiff has established a prima facie case of wage discrimination under Title VII.   She has shown that Pérez's compensation was greater than hers.   (D.E. 55, ¶ 29; 65, ¶ 10).   In addition to Pietrantoni's statement under penalty of perjury indicating that plaintiff was "at the same level" as Pérez, (D.E. 55-6, at 8), it is a disputed fact whether plaintiff held the position of Marketing Director immediately before Pérez was assigned the position in October 2009.   (D.E. 55, ¶¶ 24–25; 65, ¶¶ 5–6).   Moreover, it is contested whether plaintiff continued to perform the duties of the position of Marketing Director at the same time that Pérez held that position.   Id. Thus, since plaintiff has provided admissible evidence that she held the position of Marketing Director before being replaced by a male employee who received higher compensation, and even continued to perform duties assigned to him, plaintiff has met her prima facie burden for her Title VII wage discrimination claim.

To explain the discrepancy in wages between Pérez and plaintiff, defendant asserts, and provides admissible evidence, that Pérez's higher compensation was part of the consideration in an Asset Purchase Agreement that defendant entered into with a company of which Pérez was the sole stockholder.   (D.E. 51, ¶ 21; 51-4, at 2; 55, ¶ 21; 60-1, ¶ 3(y)).   Thus, "the presumption of discrimination evaporates."   Santiago-Ramos, 217 F.3d at 54.

At the final stage of the analysis, "[a] plaintiff can demonstrate that an employer's stated reasons are pretextual 'in any number of ways,' including by producing evidence that plaintiff was treated differently from similarly situated employees."   García, 535 F.3d at 31 (quoting Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003)).   In order to "successfully allege disparate treatment," plaintiff must establish that "others similarly situated to her in all relevant respects were treated differently by the employer."   Id. (internal quotations and modifications omitted).   Although "[t]he comparison cases 'need not be perfect replicas,' … they must 'closely

resemble one another in respect to relevant facts and circumstances.'" Id. (quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)).

Here, however, plaintiff was not similarly situated to Pérez for purposes of her wage discrimination claim. Defendant submitted uncontroverted evidence that Pérez's compensation package was part of Trafon's agreement to acquire the assets of his company. (D.E. 51, ¶ 21; 51-4, at 2; 55, ¶ 21; 60-1, ¶ 3(y)). Moreover, the recruitment letter sent to Pérez on October 29, 2009, also mentions that the "offer shall be effective as soon as the 'Asset Purchase Agreement' is signed." (D.E. 55-3, at 5). Whether defendant's agreement with Pérez's company was "a poor business decision," Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996) (quoting Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988)), is, of course, irrelevant. In contrast, no evidence has been brought to the attention of the court that plaintiff was hired, or that her compensation package was negotiated, as part of a larger or parallel agreement to acquire another company or its assets. Given these factual circumstances, it cannot be concluded that Pérez's compensation package was "'similarly situated in all material respects.'" Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 12 (1st Cir. 2003) (quoting Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999)).

With respect to Sánchez and Galarza, both received the same compensation package as plaintiff, except that both were offered a performance bonus of $10,000 and Galarza's health plan was to be fully paid by Trafon.[19] (D.E. 51, ¶ 4; 55, ¶ 4; 55-3, at 1, 3). For the fact that Sánchez and Galarza received higher compensation to constitute a genuine and material fact issue, they must be similarly situated to her. For a motion for summary judgment, once the movant has presented a properly focused motion "averring an absence of evidence to support the

---

[19] Prado received the same compensation package as plaintiff when he became Director of Human Resources. (D.E. 22-2; 29-1; 51, ¶ 6; 55, ¶ 6; 60-1, ¶ 3(l)).

nonmoving party's case, the burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Griggs-Ryan, 904 F.2d at 115 (internal quotations and modifications omitted).  Because ultimately plaintiff bears the burden of proof on the issue of pretext, she cannot merely "rely on the absence of competent evidence" regarding whether Sánchez and Galarza were similarly situated to her, "but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy, 56 F.3d at 315.

The only pieces of evidence in favor of concluding that Sánchez and Galarza were similarly situated to plaintiff are Pietrantoni's indication that she was "at the same level as" Sánchez and Galarza and the fact that all three employees had a title with the word "director" in it.[20]  (D.E. 51, ¶ 3; 55, ¶ 3; 55-3, at 1, 3; 55-6, at 8).  There is no indication that plaintiff had the same direct supervisor as Sánchez and Galarza.  (See D.E. 55-6, at 32).  No evidence has been presented as to what Sánchez's and Galarz's duties were—or even plaintiff's, for that matter. See Rollins v. Alabama Cmty. Coll. Sys., 814 F. Supp. 2d 1250, 1283 (M.D. Ala. 2011) ("Both are Directors, although while titles may be considered, they alone do not establish similarity for a pay claim."); Disler v. Target Corp., 3:04-CV-191, 2005 WL 2127813, at *21 (E.D. Tenn. Aug. 31, 2005) (finding at summary judgment stage that plaintiff could not "carry her burden of establishing that she was similarly situated to" two employees because of "the dearth of evidence in th[e] record with respect to them").[21]  Without any offer of evidence to such facts, the fact that Sánchez and Galarza had higher compensation packages cannot establish pretext.  See, e.g., Rodríguez-Cuervos, 181 F.3d at 21 (finding that plaintiff was not similarly situated to another

---

[20] Plaintiff, Sánchez, and Galarza held the positions of Director of Business and Strategic Intelligence, MIS Director, and Financial Director, respectively.  (D.E. 51, ¶ 3; 55, ¶ 3; 55-3, at 1, 3).

[21] Moreover, as previously cited, a "court cannot infer proof of similarity in skill, effort, and responsibility from the common job title of 'manager' ...." Manuel v. WSBT, Inc., 706 F. Supp. 654, 660 (N.D. Ind. 1988).

employee with respect to certain evaluations where they were performed by different supervisor, covered different periods of time, and related to different stores); Lockridge v. Univ. of Maine Sys., 597 F.3d 464, 471 (1st Cir. 2010) (finding that plaintiff was not similarly situated to a professor who, unlike plaintiff, was on a "'non-scholarly' track"); see also Negrete v. Maloof Distrib. L.L.C., 762 F. Supp. 2d 1254, 1283 (D.N.M. 2007) ("'Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.'" (quoting Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997))).

### 3.    Hostile Work Environment

In order to establish a hostile work environment claim under Title VII, plaintiff must show: "(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established." O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). "Evidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment." Id. at 729. "The accumulated effect of incidents of humiliating, offensive comments directed at women and work-sabotaging pranks, taken together, can constitute a hostile work environment." Id.

Nevertheless, Title VII is not "a general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation omitted). It does not encompass "the sporadic use of abusive language, gender-related jokes, and occasional teasing." Id. (internal quotation

omitted).  "'[O]ffhand comments, and isolated incidents' are not sufficient to create actionable harassment …."  O'Rourke, 235 F.3d at 729.  Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment" sufficient to establish a Title VII violation.  Faragher, 524 U.S. at 788.

The only facts asserted by plaintiff with respect to an alleged hostile work environment are a delay in initiating her corporate health and dental insurance plans, a failure to formally inform her of the change in her position from Marketing Director to Director of Strategic and Business Intelligence, and a comment by Valle and Pérez that, "That was easy it has to be Sylvia because she is a woman," in relation to the preparation of minutes for meetings.  (D.E. 54, at 14).

With respect to the alleged delay in her insurance plans, there is no evidence that plaintiff brought this issue to the attention of her supervisor, Prado, or anyone else at Trafon.  Plaintiff offers no evidence that any other employee's insurance plans were made effective at a quicker pace than her own.  Nor has plaintiff submitted evidence that it was Trafon's policy to provide insurance coverage more immediately after an employee's commencement of employment.  In contrast, it is uncontested that plaintiff signed a payroll deduction authorization on August 3, 2009, for an effective date of August 1, 2009, and that defendant sent letters on August 10, 2009, to the health and dental insurance providers requesting an effective date of August 1, 2009.  (D.E. 22-3; 22-4; 22-6; 29-2; 29-3; 29-5; 51, ¶¶ 7, 8, 10; 55, ¶¶ 7, 8, 10).

The remaining two allegations cannot as a matter of law constitute a hostile work environment.  Plaintiff must show that the workplace was "'permeated with discriminatory intimidation, ridicule, and insult,'" that were sufficiently "'severe or pervasive'" as "'to alter the conditions of [her] employment.'"  Acevedo Vargas v. Colón, 68 F. Supp. 2d 80, 92 (D.P.R. 1999) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  The extent of plaintiff's

remaining hostile work environment claim is a single instance of a comment relating to plaintiff's sex uttered by two non-decisionmakers[22] and a failure to formally notify her that she was assigned the new position of Director of Strategic and Business Intelligence.  One instance of non-supervisors' commenting that plaintiff should take notes because she is a woman, though inappropriate, at most can be categorized as "sporadic use of abusive language, gender-related jokes, and occasional teasing," Faragher, 524 U.S. at 788, which is insufficient to establish a hostile work environment.  While she claims that she was never *formally* notified of her change in position, plaintiff has not alleged that she never knew that she was the Director of Strategic and Business Intelligence.   Moreover, plaintiff has not alleged how defendant's failure to formally inform her of her change in position, while perhaps unprofessional, "unreasonably interfered with h[er] ability to work."  Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008).  Nor does plaintiff offer any examples of other female employees who have experienced discriminatory harassment.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).  Thus, plaintiff has not established a prima facie case of hostile work environment.

**B.     Puerto Rico Law**

Plaintiffs also have alleged causes of action under Puerto Rico Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 *et seq.* (2010) (discrimination); Law 45 of April 18, 1935, P.R. Laws Ann. tit. 11, § 7 (2010) (Workmen's Compensation Act); Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194 *et seq.* (2010) (retaliation), Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185a *et seq.* (2010) (wrongful dismissal); and Article 1802, P.R. Laws Ann. tit. 31, § 5141 (2010) (general tort statute).  (D.E. 1, ¶¶ 26–35).  Although the burden-shifting scheme differs between Title VII and Law 100, see Morales v. Nationwide Ins. Co., 237 F. Supp. 2d 147, 152 (D.P.R. 2002), because plaintiff has "adduced no significantly probative evidence that h[er]

---

[22] According to Pietrantoni's deposition, he directly supervised plaintiff, Pérez, and Valle.  (D.E. 55-6, at 2).

discharge was motivated by [gender,] … the differences between how Law 100 and [Title VII] distribute the burdens of proof are immaterial to our analysis." Dávila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 & n.4 (1st Cir. 2007) (applying such reasoning in an age discrimination context).  As such, her Law 100 claims are also dismissed with prejudice.

    With respect to plaintiffs' remaining claims under Puerto Rico law, federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed.  See 28 U.S.C. § 1367(c)(3); González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  If all federal claims are dismissed prior to trial, then the state law claims "'should be dismissed as well.'"  Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)).  Because defendant is entitled to summary judgment on plaintiffs' federal claims, their remaining state law claims are dismissed without prejudice.  See López-Rosado v. Molina-Rodríguez, Civ. No. 11-2198 (JAG), 2012 WL 4681956, at *5 (D.P.R. Sept. 28, 2012); Dávila-Feliciano v. Puerto Rico State Ins. Fund Corp., 754 F. Supp. 2d 351, 367 (D.P.R. 2010).

## V.    CONCLUSION

    Based on the foregoing analysis, defendant's motion for summary judgment (D.E. 21) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff Sylvia Cosme Montalvo's claims under Title VII and Puerto Rico Law 100 are hereby **DISMISSED WITH PREJUDICE**, whereas plaintiffs' remaining claims under Puerto Rico law are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of April, 2013.

s/Marcos E. López
U.S. Magistrate Judge
